OPINION
{¶ 1} On July 19, 2004, Sergeant Chad Carson and Deputy Jason Wortkoettor of the Licking County Sheriff's Office were dispatched to the scene of a possible suicide attempt. Upon arriving at the scene, the officers observed blood splatters and appellant, Michael Decker, with cuts to his hands and wrists. The EMS arrived to assist appellant. Appellant refused medical treatment and became belligerent. As a result of appellant's behavior, the officers placed appellant under arrest for disorderly conduct in violation of R.C. 2917.11. Appellant was also arrested for resisting arrest in violation of R.C. 2921.33.
 {¶ 2} A bench trial commenced on March 16, 2006. By judgment entry filed same date, the trial court found appellant guilty and sentenced him to thirty days in jail, suspended, and placed him on probation for one year.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT COMMITTED HARMFUL ERROR IN CONVICTING THE DEFENDANT-APPELLANT OF DISORDERLY CONDUCT."
 II {¶ 5} "THE TRIAL COURT COMMITTED HARMFUL ERROR IN CONVICTING THE DEFENDANT-APPELLANT OF RESISTING ARREST."
 I {¶ 6} Appellant claims his conviction for disorderly conduct is against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 7} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, followingJackson v. Virginia (1979), 443 U.S. 307. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175. See also, State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."Martin at 175.
 {¶ 8} Appellant was convicted of disorderly conduct in violation of R.C. 2917.11 which states the following:
 {¶ 9} "(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another, by doing any of the following:
 {¶ 10} "(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;
 {¶ 11} "(2) Making unreasonable noise or offensively coarse utterance, gesture, or display, or communicating unwarranted and grossly abusive language to any person;
 {¶ 12} "(3) Insulting, taunting, or challenging another, under circumstances in which such conduct is likely to provoke a violent response;
 {¶ 13} "(4) Hindering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act which serves no lawful and reasonable purpose of the offender;
 {¶ 14} "(5) Creating a condition which is physically offensive to persons or which presents a risk of physical harm to persons or property, by any act which serves no lawful and reasonable purpose of the offender."
 {¶ 15} In finding appellant guilty, the trial court based its decision on the specific facts of the case:
 {¶ 16} "Here's what the officer was confronted with. The officer's medical people . . . they were informed that there was a possible suicide attempt. They made contact with the Defendant. The Sergeant testified that he was very uncooperative. That he was hostile to them. At some point, the EMS uh . . . paramedic learned that the Defendant had a history of um . . . bi-polar treatment or diagnosis or disorder. There was a reference in the emergency medical services report that there was an odor of alcohol. That he had been drinking. I think when you combine all those factors together, the officer's um . . . are certainly entitled to take that into consideration. And even though he has the right to refuse medical treatment, I don't think that's what this case is about. It's certainly a big part of what the underlying conflict with the officers and the EMS folks dealt with. But I think that's looking at the case too narrowly here. We've got the Defendant's own mother calling family members to get over there because she was so concerned about some statements the Defendant apparently made. I uh . . . I'm going to enter a guilty finding on these two charges and uh . . . those are my reasons." T. at 79.
 {¶ 17} Appellant argues he was perfectly within his rights to refuse medical treatment, his injuries were not life threatening, and his actions did not cause "inconvenience, annoyance, or alarm to another."
 {¶ 18} It is important to note the deputies and the EMS were called to appellant's home at the request of his mother. The initial call was for an attempted suicide. When the deputies arrived, they observed a broken window, splatters and puddles of blood and appellant with cuts to his wrists and hands. T. at 6. Appellant refused treatment, but did so in a combative manner. Sergeant Carson explained why he arrested appellant for disorderly conduct:
 {¶ 19} "Based on the fact . . . the amount of blood that I saw and his demeanor. His demeanor was such that it caused me to believe that he may be under the influence of either alcohol or drugs of some type. He couldn't care for himself. The amount of blood that I observed, past experiences, could create a problem for him later on. Um . . . if we just left it would be a liability for me if something would happen to him later on. He was being, frankly, uncooperative with us. He wouldn't give his name. He wouldn't give us any information." T. at 7-8.
 {¶ 20} This testimony was substantiated by the EMS paramedic/firefighter, Troy Burgess. Mr. Burgess observed multiple lacerations and deep cuts on appellant's right hand. T. at 23-24. There was the presence of "quite a bit of blood" at the scene and although the bleeding had stopped, medical treatment was required. T. at 24, 30-31. Mr. Burgess also testified because of appellant's actions and combativeness, he was concerned for the safety of his crew. T. at 36.
 {¶ 21} Appellant testified he had been drinking but had "sobered up" by the time of the incident. T. at 60. He admitted the scene as described by Sergeant Carson and Mr. Burgess was as they stated, but claimed the injury was not suicide related and had happened three hours prior to his arrest. T. at 57-58. He stated when the deputies arrived, he was "just sitting there, pretty much just being lazy," with his hand wrapped in a towel. T. at 58, 60.
 {¶ 22} We concur with the trial court's analysis that although appellant was free to refuse treatment, his demeanor, language and injuries all contributed to his arrest for disorderly conduct. The fact that appellant's own actions caused the EMS crew chief to fear for his crew's safety further establishes the trial court was correct in finding appellant guilty of disorderly conduct. Although appellant denied it was a suicide attempt, the deputies' knowledge at the scene was that the call was a suicide attempt. Nothing within their observation mitigated against that assumption.
 {¶ 23} Upon review, we find sufficient evidence to convict appellant of disorderly conduct, and find no manifest miscarriage of justice.
 {¶ 24} Assignment of Error I is denied.
 II {¶ 25} Appellant claims the trial court erred in convicting him of resisting arrest. We disagree.
 {¶ 26} Appellant challenges the issue of lawful arrest and concedes if he does not prevail in Assignment of Error I, this assignment is moot. See, Appellant's Brief at 12. Appellant does not challenge the sufficiency of the facts.
 {¶ 27} Upon review, we agree this assignment is rendered moot under our decision in Assignment of Error I.
 {¶ 28} Assignment of Error II is moot.
 {¶ 29} For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Licking County, Ohio is hereby affirmed.
By Farmer, J. Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Licking County, Ohio is affirmed.